IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KENNETH M. KILPATRICK | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| DAVID J. SHULKIN, Secretary, | : | |
| U.S. Department of Veterans Affairs | : | No. 16-1193 |

FILED
SEP 26 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## MEMORANDUM

Padova, J.                                                                                          September 26, 2017

### I. INTRODUCTION

Plaintiff Kevin M. Kilpatrick brought this suit alleging he was terminated from his position with the Department of Veterans Affairs ("VA") in retaliation for having sought counseling from a VA Equal Employment Opportunity ("EEO") official. Presently pending is Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted and judgment is entered in favor of Defendant.[1]

### II. FACTS

The Parties have stipulated to the following facts:

1. The plaintiff, Kenneth Michael Kilpatrick, was employed by the defendant, the U.S. Department of Veterans Affairs (VA), from April 2003 when he was hired as an Information Technology (IT) Specialist at the VA Regional Office in Philadelphia, Pennsylvania, until he was terminated on June 5, 2009.

2. In 2009, Kilpatrick's second-line supervisor was Terris Farmer, Chief of the Technical Support Division of the VA Philadelphia Information Technology Center.

3. On February 17, 2009, Kilpatrick contacted the VA's Office of Resolution Management (ORM) to seek EEO counseling concerning allegations of discriminatory harassment against him. Kilpatrick specifically identified Farmer

---

[1] We granted an unopposed Motion to substitute VA Secretary David J. Shulkin as the named Defendant on February 23, 2017. (See Docket No. 42.)

as an alleged harasser.

4. On February 24, 2009, Carol A. Winter, Kilpatrick's third-line supervisor, and Farmer's immediate supervisor, received written notification from ORM that Kilpatrick had sought EEO counseling and that he identified Farmer as an alleged harasser.

5. On May 28, 2009, Winter, on behalf of the VA, decided to remove Kilpatrick effective June 5, 2009.

(Statement of Stipulated Facts, Def. Ex. 1 (citations omitted).)

The summary judgment record also contains evidence regarding the following additional facts. In January 2009, Kilpatrick received a new work computer. (Arb. Tr. Vol. IV at 467:24-468:2.[2]) Without authorization, Kilpatrick used password cracking software to change the password on an administrator account, which gave him administrative privileges on his new computer. (Arb. Tr. Vol. III at 414:3-416:18.) To accomplish this, Kilpatrick removed a memory stick from an unused workstation computer without authorization and installed it in his new computer. (Id. at 418:2-419:3.) Plaintiff testified that a fellow employee, Josh Robinson, the VA's VMWare expert, provided him with the software he used to change the administrator password so that he could install VMWare on his new computer. (Id. at 414:12-416:18.) However, VMWare made Plaintiff's computer run too slowly, so he took a memory stick from an unused computer at a nearby workstation to add memory to his computer so that it would run more quickly. (Id. at 418:11-419:4.)

Kilpatrick's unauthorized use of the password cracking software and memory stick first came to the attention of VA management, including Farmer, in an email sent on January 25, 2009, by Anthonie Gross, a VA systems administrator. (Arb. Tr. Vol. I at 81:1-6; 83:18-21.) The email described Gross's discoveries that Kilpatrick had removed a memory stick from an

---

[2] Plaintiff arbitrated his claims before the Federal Mediation and Conciliation Service prior to filing the instant lawsuit.

2

unused computer and installed it in his own, and that Kilpatrick had changed passwords on his new computer and created an account for his own use with administrator's access. (Id. at 21:12-22:2; Def. Ex. 17.) After receiving the January 25, 2009 email, Farmer shared it with her direct supervisor, Carol Winter, and later met with Winter to discuss how to proceed. (Arb. Tr. Vol. I at 83:22-84:1.)

Between January 25, 2009 and February 5, 2009, VA supervisors discussed the report of Kilpatrick's unauthorized activities, reviewed VA Directive 6500 — a list of employee misconduct and applicable disciplinary actions, reviewed the local office's Rules of Behavior, and sought guidance from the VA's human resources staff, before they decided how to proceed. (Arb. Tr. Vol. I at 83:22-84:1, 113:12-119:25, 122:4-20, 133:5-134:25; Arb. Tr. Vol. II at 158:19-159:1; see also Def. Ex. 19 (Philadelphia Information Technology Center Rules of Behavior), Def. Ex. 23 (VA Directive 6500).) Winter was on vacation the week of January 26, 2009, and did not learn about the Gross email until the following week. (Arb. Tr. Vol. II at 236:9-11.) Between January 25, 2009 and February 5, 2009, the VA supervisors also came up with a plan of action, coordinated schedules for a meeting, notified Plaintiff's union, and then exercised the plan of action. (Arb. Tr. Vol. I at 122:4-22; 125:7-14.)

James Boring was the VA Information Security Officer ("ISO") charged with investigating the security incident involving Kilpatrick. (Kilpatrick Dep. at 135:21-136:2.) Boring worked for the VA Office of Information Security, which is a separate organization within the VA from where Plaintiff worked, and did not report to Winter. (Arb. Tr. Vol. II at 187:2-11.) Boring was not in charge of disciplinary or termination procedures for VA employees; his role was to investigate and make recommendations. (Kilpatrick Dep. at 136:3-8; Arb. Tr. Vol. III at 346:12-347:12.) Winter requested that Boring conduct the investigation into

3

Kilpatrick because part of Boring's role as an Information Security Officer is to know "the rules, regulations, and policies of information security," and because she "wanted to be sure that the investigation, review, [and] fact-finding was done [and presented] objectively." (Id. at 187:14-22.) Boring began his investigation into Kilpatrick's conduct on February 5, 2009. (Arb. Tr. Vol. III at 338:16-19.)

On February 5, 2009, Farmer met with Plaintiff, Thomas Michalski, Plaintiff's first-line supervisor, and a union representative to inform Plaintiff that the VA was investigating the unauthorized hardware and software changes to his workstation computer. (Kilpatrick Dep. at 97:4-20.) During the meeting, Plaintiff's supervisors gave him a medical information request form. (Id. at 85:8-86:24.) Plaintiff told his treating psychiatrist on February 13, 2009 that agency officials "noticed his mood had been off," and he had been found sleeping at his desk. (Def. Ex. 8; Arb. Tr. Vol. III at 424:25-425:19.) Also on February 5, 2009, VA management took Kilpatrick's work computer away from him. (Kilpatrick Dep. at 40:16-17, 47:2-25, 97:4-10.) As of February 5, 2009, Plaintiff's access to the server room ceased, he no longer had any ability to log into the servers from his workstation, and he was restricted to email and internet only. (Id. at 98:9-22.)

Plaintiff had no meetings with Farmer between February 5, 2009, when his computer was seized, and April 2, 2009, when he received notice of his proposed removal. (Id. at 47:2-13, 48:11–49:5; Arb. Tr. Vol. I at 92:5-10.) On February 11, 2009, Plaintiff and his union representative met with Michalski, who told Kilpatrick that he would be losing his internet connection and email access. (Kilpatrick Dep. at 48:5-10.) As of February 11, 2009, Plaintiff's access to the internet and email were removed, and he was no longer allowed to perform any work. (Id. at 99:7-100:3.) Between February 11, 2009 and April 2, 2009, when the Notice of

4

Proposed Removal was issued, Kilpatrick's work situation remained unchanged. (Id. at 103:1-104:7.) After February 11, 2009, Plaintiff had no further communications with VA management. (Id. at 116:8-25.)

On February 17, 2009, Plaintiff contacted the VA Office of Resolution Management ("ORM"), in Lyons, New Jersey, for informal EEO counseling concerning the medical form he had been asked to complete, at which time he suggested that he was being discriminated against on the basis of a perceived mental disability. (Arb. Tr. Vol. IV at 475:16-476:13 (stipulation regarding date), Arb. Tr. Vol. III at 429:20-430:7; Def. Ex. 26 (VA 2420 Notice of Informal Counseling).) Carol Winter received a notification of the informal counseling on February 24, 2009. (VA 2420 Notice.) On March 27, 2009, Plaintiff's attorney emailed Winter and Farmer, stating that Kilpatrick had "sought precomplaint counseling alleging agency discrimination." (Def. Ex. 22 at 1.)

On February 18, 2009, Boring interviewed Plaintiff as part of his investigation. (Arb. Tr. Vol. III at 432:19-22.) During the interview, Plaintiff acknowledged that he had accessed the local administrator's account on his computer by using a password-reset utility. (Id. at 433:7-15.) He said that a co-worker had given him the password reset utility, but he declined to name that co-worker. (Id. at 433:11, 23-25.) He also admitted removing a memory stick from an unused computer and inserting it in his computer for his own use. (Id. 433:18-21; Def. Ex. 18 at VA 001264-65.)

On April 2, 2009, Farmer issued a Proposed Removal Notice to Plaintiff based on his multiple unauthorized changes to administrative privileges and unauthorized changes to his workstation. (Def. Ex. 10.) The reasons for Kilpatrick's proposed removal as stated in the April 2, 2009 Notice were:

5

[a.] As a result of an ongoing investigation during January and February of this year, I have concluded that you engaged in the removal of, and installation of memory board(s) from an unused PC to your PC. This removal and installation was unauthorized. Further, ITC Security Officer, James Boring, determined that the security logs on your workstation indicated that the administrator's account password had been modified on four occasions and that an IITKKILP logon account had been created and granted administrator's privileges. Further, a disk was found inside your CD-ROM drive labeled "Password Reset." The contents of this disk contained a password cracking utility. In an interview with James Boring, you admitted to having changed the administrator's account password, to creating the IITKKILP account, to having used the password cracking utility and to having taken the memory card from the vacant workstation and installed it into your own workstation. You were not unauthorized to change administrative privileges and make unauthorized hardware and configuration changes to your workstation. Additionally, the effort to remediate your unauthorized practices required the use of several manhours of work that could have been better utilized elsewhere. Your conduct also demonstrates a misuse of your workstation and is in violation of VA Directive 6500, VA Rules of Behavior, and ITC Rules of Behavior.

b. Further, the facility has been left with no choice but to limit you from performing your normal duties during this period due to your manager(s) losing confidence and trust in giving you access to the computer systems since the discovery of your unauthorized activities. Your unauthorized activity has led to the disruption of the work effort and the loss of production. You no longer retain my confidence that you can be trusted in complying with the rules and directives that govern the sensitive personally identifiable information contained in the databases entrusted to our care and security.

(Id.) Plaintiff claims that the reasons stated in the April 2, 2009 Notice of Proposed Removal and the May 28, 2009 decision on the proposed removal are pretextual. (Kilpatrick Dep. at 127:1-129:13.)

It took Farmer one-and-one-half to two months to review and consider all of the information about the incident and to consider what options were available before deciding to propose Plaintiff's removal. (Arb. Tr. Vol. I at 91:11-15.) Farmer testified at the arbitration that it took her so long because, at that time, she had not handled many disciplinary actions in her federal career, the process was not routine to her, and the facts, circumstances and penalties

6

applicable to each disciplinary action are different. (Id. at 134:1-135:6.) When she was deciding whether to propose Plaintiff's removal, Farmer talked with her management, called human resources for advice, reviewed all the information she had available, and consulted a table of penalties. (Id. at 87:12-19.) The information Farmer reviewed included evidence submitted by ISO Boring. (Id. at 93:13-15.) Farmer was satisfied that the evidence gathered by Boring was substantial enough to justify removing Plaintiff from his position. (Id.) Farmer proposed Plaintiff's removal, rather than another form of punishment, because she could not trust him to have access to the VA's computer system. (Id. at 91:13-23.) She testified that, as administrators of the VA system, managers must trust and believe that VA employees will follow the established security guidelines and regulations and not take privileges they are not allowed to have. (Id. at 88:1-12.)

Before Farmer issued the proposed removal notice, she discussed the proposed discipline with Winter. (Id. at 144:15-18.) Farmer and Winter considered other penalties besides removal, including suspension, but determined that Plaintiff could not be trusted to have access to the VA systems and there was no work they could give to him without giving him access to the systems. (Id. at 91:18-92:4.) Farmer maintains that her decision to propose Plaintiff's removal was not motivated by his EEO activity and that she was not aware of his EEO activity at the time she proposed his removal. (Id. at 92:17-19.)

On May 11, 2009, prior to his termination, Plaintiff met with Winter and made an oral reply to the proposed removal notice. (Arb. Tr. Vol. II at 176:19-20; Def. Ex. 20; Arb. Tr. Vol. III at 437:14-438:4.) During his oral reply, Plaintiff accepted responsibility for his actions, but claimed other VA employees had engaged in similar conduct, although he declined to give any names of others whom he suspected of the same conduct. (Arb. Tr. Vol. II at 179:11-180:2; Def.

7

Ex. 20 at 2; Arb. Tr. Vol. III at 439:15-440:9.) Plaintiff also stated in his reply that management could have determined for itself the names of other VA employees had engaged in similar conduct by searching the log files of the PCs of other IT specialists in his workgroup. (Arb. Tr. Vol. III at 439:16-23.) Plaintiff also apologized, stating that he made a mistake and did not believe at the time he was doing anything wrong. (Id. at 440:5-9.) On May 14, 2009, Plaintiff sent a written reply to Winter regarding the proposed removal notice, reiterating his apology and stating that "Although I was simply trying to expedite my configuration of my new PC, what I did was wrong and I certainly realize that now. I should have gone through the proper channels and requested permission before taking actions upon myself." (Kilpatrick Dep. at 136:16-137:17; Def. Ex. 12.)

On May 28, 2009, Winter, on behalf of the VA, decided to remove Plaintiff, effective June 5, 2009. (Def. Ex. 11.) Her written decision stated that the VA had determined that Plaintiff's actions violated the VA's rules and directives, and that Plaintiff's managers had lost trust in him and saw him as a security risk. (Id. at 1.) In making the decision to remove Plaintiff, Winter reviewed the facts of the case, based on the fact-finding report prepared by ISO Boring, reviewed VA Directive 6500, went through an analysis of the factors the VA considered relevant to disciplinary decisions, reviewed the master agreement between the VA and the union, reviewed internal VA policy rules of behavior, and consulted Human Resources for guidance on the policies, procedures, rules and regulations. (Arb. Tr. Vol. II at 155:12-159:19.) Winter also considered the nature and seriousness of the misconduct and determined that Plaintiff had committed a serious violation of security with his unauthorized access to an administrator account and his use of a password-cracking program, in violation of the VA's security rules, which had the potential to do serious damage, even if he did not intend to do so. (Id. at 163:1–

8

166:17.) Winter further considered that Plaintiff had admitted his conduct, admitted that he did not follow procedures, and admitted the potential for damage. (Id. at 180:19-181:3.) Based on all of these factors, Winter believed that the penalty of removal was reasonable. (Id. at 184:20-185:14.) Winter made the final decision to remove Plaintiff. (Id. at 185:15-22.) Winter maintains that her decision to remove Plaintiff was not based on his filing of any EEO matters. (Id. at 186:2-8.)

On June 5, 2009, the VA officially terminated Plaintiff's employment. (Arb. Tr. Vol. I at 11:4-7.) Plaintiff claims that his termination was an act of retaliation for his EEO activity. (Kilpatrick Dep. at 122:8-14.) However, he admits that no one involved in the decision to terminate him ever stated to him that the reason he was terminated was because of his EEO activity. (Id. at 124:10-14.)

On June 23, 2009, following his termination, Plaintiff and his union filed a grievance under the union agreement, challenging the VA's termination decision. (Def. Ex. 27 at 2.) In his grievance, Plaintiff challenged his termination as improper on two separate grounds: (1) his termination was an unreasonable and excessive penalty for his conduct; and (2) his termination was motived by retaliation for his prior EEO activity. (Id. at 4.) On February 13, 2013, the Arbitrator issued a decision finding in favor of Plaintiff on his first asserted ground, concluding that the VA's choice of the disciplinary penalty of termination was both excessive and unreasonable. (Id. at 44.) As a remedy, the Arbitrator ordered that the VA rescind Plaintiff's termination, convert the discipline to a 10-day working suspension without pay, reinstate Plaintiff to his prior position as of June 5, 2009, and make him whole for losses incurred as a result of his termination, including back pay and reasonable attorney's fees. (Id. at 46-47.) Regarding Plaintiff's retaliation claim, the Arbitrator found that she could not conclude that VA

9

management's true intent was to punish Plaintiff for having contacted an EEO counselor. (Id. at 45.)

Plaintiff was reinstated as a VA employee in March 2013. (Kilpatrick Dep. at 22:7-19.) Nonetheless, on April 11, 2013, Kilpatrick filed a request with the Merit Systems Protection Board ("MSPB") asking it to review the Arbitrator's decision that mitigated his termination to a 10-day suspension, challenging the decision on two separate grounds: (1) the Arbitrator erred in not finding that Plaintiff's due process rights were violated; and (2) the Arbitrator erred in not finding that Plaintiff had "proved his claim of retaliation for engaging in protected EEO activity." (Def. Ex. 28 at 1-2.) The MSPB issued its decision on May 8, 2014, finding in favor of Plaintiff on his first ground, concluding that the VA had violated his due process rights when deciding to terminate him, because the deciding official considered Plaintiff's prior misconduct without giving him an appropriate opportunity to respond. (Id. at 7.) As a remedy, the MSPB vacated that portion of the Arbitration Award regarding the removal, and ordered that the VA cancel Plaintiff's termination and reinstate him to his prior position as of June 5, 2009, and to make him whole for losses he incurred as a result of his termination, including back pay and other benefits. (Id. at 10-11.) The MSPB decided against Plaintiff on his second ground for relief, concluding that he failed to prove that his termination was motivated by Plaintiff's prior EEO activity. (Id. at 8-11.)

On February 20, 2015, Plaintiff petitioned the U.S. Equal Employment Opportunity Commission ("EEOC") to review the MSPB's decision on his claim of retaliation. (Def. Ex. 29 at 1.) The EEOC issued its decision on February 11, 2016, finding that Plaintiff had failed to show that his termination was based on retaliation. (Id. at 5.) The EEOC found specifically that Plaintiff did not demonstrate discriminatory animus or pretext, and that he had failed to present

evidence of alleged pretext beyond his own assertions. (Id.) In this action, Plaintiff seeks judicial review and a trial de novo of the discrimination claim he brought before the arbitrator, the MSPB and the EEOC. He maintains that the VA's unlawful removal was retaliation for his EEO activity in violation of Title VII.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment." Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002) (citation omitted). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A)

11

citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)).

## IV. DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits retaliation by making it unlawful for employers to discriminate against "any individual . . . because he has opposed any . . . unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). "[Title VII's] antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Moreover, even if an employee makes a claim of discrimination that is found to be without merit, the antiretaliation provision of Title VII still protects the employee. Hicks v. ABT Assocs., Inc., 572 F.2d 960, 969 (3d Cir. 1978)

The record before us contains no direct evidence that Plaintiff was retaliated against for seeking informal EEO counseling on February 17, 2009. Where there is no direct evidence, claims for discriminatory retaliation are analyzed using the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Young v. City of Philadelphia Police Dep't, 651

12

F. App'x. 90, 95 (3d Cir. 2016) (citing Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006)). "Under this framework, a plaintiff must first establish a prima facie case of retaliation under Title VII, by showing that: (1) [he] 'engaged in [a protected] activity'; (2) 'the employer took an adverse employment action against [him]'; and (3) 'there was a causal connection between [his] participation in the protected activity and the adverse employment action.'" Id. (second alteration in original) (quoting Moore 461 F. 3d at 340-41). To establish the causation element of the prima facie case, "a plaintiff must introduce evidence about the 'scope and nature of conduct and circumstances that could support the inference' of a causal connection between the protected activity and adverse action." Id. at 95-96 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)). To show this causal link, "a plaintiff may rely on a 'broad array of evidence.'" Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (quoting Farrell, 206 F.3d at 284). Temporal proximity between the protected activity and the adverse action can support an inference of causation, but it must be "unusually suggestive." Farrell, 206 F.3d at 280.

If the plaintiff is successful in establishing a prima facie case at step one of the McDonnell Douglas framework, at step two, the burden shifts to the defendant to "'articulate a legitimate, non-discriminatory reason for the alleged adverse employment action.'" Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999)). If the defendant meets its step two burden, at step three of the McDonnell Douglas framework, the plaintiff must show by a preponderance of the evidence that the defendant's proffered legitimate, nondiscriminatory reason was pretextual. Id. "[T]o prove causation at the pretext stage, the plaintiff must show that [he] would not have suffered an adverse employment action 'but for' [his] protected activity." Young, 651 Fed.

13

App'x. at 96 (citing Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013)). This requires that a plaintiff "show 'both that the [Department's] proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Young, 651 F. App'x at 99 (alteration in original) (quoting Moore, 461 F.3d at 342).

Defendant does not dispute for the purposes of this Motion that (1) Plaintiff "engaged in protected activity when he contacted [the] EEO counselor to complain of alleged discrimination based on a perceived mental disability;" and (2) "the VA later terminated [Plaintiff,] which would constitute an adverse employment action." (Def. Mem. at 10.) Consequently, we conclude that Plaintiff has established these two elements of a prima facie case of retaliation.

However, we find that there is no record evidence to support a conclusion that there was a causal connection between Plaintiff's EEO activity on February 17, 2009, the issuance of the Proposed Removal Notice on April 2, 2009, and Plaintiff's termination from employment on June 5, 2009. "There are 'two primary ways to substantiate' the requisite causal connection: 'showing that the temporal proximity between the two is "unusually suggestive," or pointing to an "ongoing antagonism" between the plaintiff and defendant.'" Melton v. U. S. Soc. Sec. Admin., Civ. A. No. 10-7217, 2012 WL 3844379, at *8 (E.D. Pa. Sept. 5, 2012) (quoting Gladysiewski v. Allegheny Energy, No. 09-4680, 2010 WL 3622446, at *2 (3d Cir. Sept. 20, 2010)). Thus, "where 'the temporal proximity is not so close as to be unduly suggestive,' " the Third Circuit has "recognized that 'timing plus other evidence may be an appropriate test. . . .'" Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003)).

The time between Plaintiff's EEO activity and the issuance of the Proposed Removal Notice was approximately six weeks. The time between the EEO activity and the final decision

14

to terminate Plaintiff was approximately three months. We conclude that this is not close enough in time to be unusually suggestive of a causal connection. See Thomas, 351 F.3d at 114 (stating that timing was not unusually suggestive where over three weeks passed between complaint and termination letter); Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (finding that five-month time period between employee's informal EEO complaint and first alleged adverse action, without additional evidence, was insufficient to infer casual connection in Title VII retaliation case); Warenecki v. City of Philadelphia, Civ. A. No. 10-1450, 2010 WL 4344558, at *11 (E.D. Pa. Nov. 3, 2010) ("Generally, a period of several months between the protected activity and the adverse employment action is insufficient to create a causal inference." (citing cases)); Wooler v. Citizens Bank, Civ. A. No. 06-1439, 2006 WL 3484375, *7 (E.D. Pa. Nov 30, 2006) (holding that gap of approximately four months between plaintiff's protected activity and termination was not "unusually suggestive").

Furthermore, an examination of the timing and "the record as a whole," see Farrell, 206 F.3d at 281, leads to the conclusion that Plaintiff has failed to meet his burden to show a causal connection between his protected activity and the adverse employment action. Farmer testified at the arbitration hearing that her decision to propose Plaintiff's removal was not motivated by his EEO activity and that she was not aware of his EEO activity at the time she proposed his removal. (Arb. Tr. Vol. 1 at 92:14-19.) Winter also testified at the arbitration hearing that her decision to remove Plaintiff was not based on his filing of any EEO matters. (Arb. Tr. Vol. II at 186:2-8.) Plaintiff did not challenge this testimony and has submitted no other evidence of a causal connection between his informal EEO counseling and his termination by the VA.

Moreover, the investigation that led to his termination began before Plaintiff engaged in protected activity. The United States Supreme Court has held that an employer need not suspend

15

an investigation of improper activity nor refrain from carrying out an employment decision because an employee subsequently engages in protected activity. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). The United States Court of Appeals for the Third Circuit has similarly stated that

> [t]he case law provides that an employee may not insulate herself from termination by covering herself with the cloak of Title VII's opposition protections *after* committing non-protected conduct that was the basis for the decision to terminate. If subsequent conduct could prevent an employer from following up on an earlier decision to terminate, employers would be placed in a judicial straight-jacket [sic] not contemplated by Congress.

Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 137 (3d Cir. 2006) (citations omitted). Finally, Plaintiff stipulated that he violated agency rules when he used the password cracking software and memory stick to gain administrator access to install software. (Kilpatrick Dep. at 139:17-25.) Plaintiff has also stipulated that a VA employee can be terminated for violating VA Directive 6500. (Kilpatrick Dep. at 138:14-139:10.) While the arbitrator concluded that termination was not a reasonable discipline under the circumstances, it is undisputed that Plaintiff's conduct constituted intentional unauthorized use of Government property, and under the applicable Table of Penalties, the penalty for a first offense can include removal. (Arb. Tr. Vol. II at 175:6-176:5; Def. Ex. 21.) Plaintiff failed to put on any evidence that any other employee who admitted to conduct similar to his own admitted violation of VA policy was subjected to a lesser penalty. (Kilpatrick Dep. at 144:9-12.) Accordingly, we conclude that Plaintiff has failed to meet his summary judgment burden to submit evidence that could establish the causation element of a prima facie case at step one of the McDonnell Douglas factors.

16

Even if Plaintiff had met his burden at step one, at step two of the McDonnell Douglas factors Defendant has met the burden to state a legitimate, nondiscriminatory reason for the adverse employment action, namely that Plaintiff was terminated for his violation of VA Directive 6500 when he failed to follow agency computer security guidelines and used the password cracking software and memory stick from another computer to change his own computer. Defendant's decision to terminate Plaintiff was based on ISO Boring's investigation of Plaintiff's conduct, and a review VA directives and rules of behavior. (See Def. Ex. 10; Def. Ex. 11; Arb. Tr. Vol. I at 87:12-19; 91:11-23; 93:13-15; 134:1-135:6; 144:15-18; Arb. Tr. Vol. II at 155:12-159:19; 163:1-166:17; 180:19-181:3; 185:15-22; Arb. Tr. Vol. III at 432:19-22; 433:7-21.)

At step three of the McDonnel Douglass framework, we find that Plaintiff has failed to produce evidence sufficient to establish a genuine issue of material fact regarding whether Defendant's purported legitimate, nondiscriminatory reason for his termination was pretextual. To meet this summary judgment burden, Plaintiff is required to present evidence sufficient to create a genuine issue of material fact regarding whether (1) the employer's proffered explanation was false, and (2) retaliation was the real reason for the adverse employment action. Young, 651 F. App'x at 99 (quotation omitted). Notably, other than acknowledging that a plaintiff has the ultimate burden of proof of retaliation and that he must show that the Defendant's proffered reason is merely pretext (see Pl.'s Mem. at 5), Plaintiff does not specifically address the pretext issue and how he can meet his burden to show but for causation.

We find that Plaintiff has failed to meet his summary judgment burden to produce evidence that the proffered reason behind the Defendant's decision to terminate him was false and that the "real" reason for the termination was retaliation. Although Plaintiff's termination

17

was found to be an excessive discipline during his grievance procedure, removal from one's position was an available "first offense" punishment for a VA employee engaging in the kind of conduct in which Plaintiff admits he engaged because of the threat to the agency's computer security, the threat to the security of beneficiaries' confidential information, and the breach of employee trust. (Arb. Tr. Vol. II at 175:6-176:5; 181:20-182:12; 184:24-185:14.) Winter testified at the arbitrator's hearing that her decision to remove Kilpatrick was not based on his EEO activity, and Plaintiff did not challenge her testimony on this issue. (Arb. Tr. Vol. II at 186:2-8.) Farmer also testified that her decision to propose Kilpatrick's removal was not motivated by his EEO activity, even though she could not specifically remember whether, at the time she issued the proposed removal, she knew that Plaintiff had already seen the EEO counselor. (Arb. Tr. Vol. I at 92:17-19, 110:5-111:19.) Farmer proposed removal, rather than another form of punishment, because Plaintiff's conduct constituted a breach of trust. (Id. at 88:1-12, 91:15-23.)

Although he has the burden to present evidence of pretext, Kilpatrick admits that he has no evidence that anyone involved in the decision to terminate him ever stated to him that the reason he was terminated was because he sought EEO counseling. (Kilpatrick Dep. at 124:10-14.) Plaintiff's only evidence of alleged retaliatory animus is that the agency over-disciplined him and failed to conduct a full investigation. This, however, has already been addressed by the arbitrator's and MSPB's decisions to reinstate Plaintiff with full back pay, and does not, we find, provide sufficient evidence to create a genuine issue of fact regarding whether Plaintiff would have been terminated but for Defendant's unlawful motivation.

Plaintiff also asserts that Winter's stated motive in taking disciplinary action against him is undermined because: (1) Plaintiff's first-line supervisor Thomas A. Michalski and second-line

supervisor Terris Farmer never questioned him about the security violation to explore the nature, scope, extent, or potential impact of the violation; (2) Winter never questioned Plaintiff about the security violation; (3) Winter did not question Systems Administrator Gross; (4) Winter waited eleven days to contact the ISO about the violation even though agency procedures state that such a violation should be reported immediately; and (5) the investigation was focused exclusively on whether Plaintiff committed a technical violation of VA Directive 6500, not whether his conduct had any actual impact on network security or the privacy right of veterans. We find that Plaintiff's assertions, by themselves, are insufficient to establish but for causation. The summary judgment record shows that (1) ISO Boring, not Winter, Farmer or Michalski, was charged with investigating the incident (Kilpatrick Dep. at 135:21-136:2), and Plaintiff does not explain how his supervisors' failure to duplicate Boring's work is evidence of retaliation; and (2) Winter was on vacation for part of the eleven-day delay period. (Arb. Tr. Vol. II at 236:9-11.) Additionally, Plaintiff's assertion that the investigation "focused exclusively on whether Plaintiff committed a technical violation" depends on Plaintiff's characterization of events, which is not supported by the record. Accordingly, we conclude that Plaintiff has failed to produce evidence sufficient to establish a genuine issue of material fact regarding whether Defendant's purported legitimate, nondiscriminatory reason for his termination was pretextual.

## V. CONCLUSION

Plaintiff has failed to meet his causation burden at the first step of the McDonnel Douglass framework. Even if he had met this burden, Defendant stated a legitimate, nondiscriminatory reason for taking the adverse employment action and Plaintiff failed to produce evidence sufficient to establish a genuine issue of material fact regarding whether that stated legitimate, nondiscriminatory reason was pretextual and that retaliation was the real reason

19

for his termination. Accordingly we enter summary judgment in favor of Defendant as to Plaintiff's sole claim of retaliation in violation of Title VII. An appropriate order granting the Motion and judgment in favor of Defendant will be entered.

BY THE COURT:

_/s/ John R. Padova_
John R. Padova, J.